## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | | |
|---|---|---|
| BENNETT STREET PROPERTIES, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No.: |
| | ) | |
| v. | ) | 1:22-CV-00940-MLB |
| | ) | |
| THE CINCINNATI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Bennett Street Properties, L.P. hereby files this First Amended Complaint for Breach of Contract and Bad Faith against The Cincinnati Insurance Company seeking the full amount of coverage due under a policy of insurance that The Cincinnati Insurance Company sold to Plaintiff, and a statutory penalty of up to 50% of the amount of coverage due under that policy because The Cincinnati Insurance Company has refused in bad faith to timely pay to Plaintiff the amount due under its policy.

## THE PARTIES

### 1.

Plaintiff Bennett Street Properties, L.P. ("Bennett Street") is a limited

partnership created and existing under the laws of the State of Georgia, with its primary place of business located at 55 Bennett Street, in Atlanta, Georgia. The building that is the subject of this Complaint is located at 45 Bennett Street in Atlanta, Georgia. Bennett Street is domiciled in and a resident of the State of Georgia, and thus a citizen of the State of Georgia. The partners in Bennett Street are (1) Stephen H. Fuller, who is a resident of, domiciled in, and thus a citizen of the State of Georgia; (2) BLS Limited, a limited partnership that is organized in and has its primary place of business in Georgia; and (3) Bennett Street Realty, LLC, which is organized in and has its primary place of business in Georgia. The partners in BLS Limited, and the members of Bennett Street Realty, LLC are Jack Brown, Truitt Stubbs, and Gregg Loomis, all of whom are residents of Georgia, domiciled in Georgia, and thus citizens of the State of Georgia.

2.

Defendant The Cincinnati Insurance Company ("Cincinnati") is a foreign insurance company organized and created under the laws of the State of Ohio, with its principal place of business located at 6200 South Gilmore Road, Fairfield, Ohio 45014. Cincinnati is domiciled in and a resident of the State of Ohio, and thus a citizen of the State of Ohio. Cincinnati may be served with service of process by

serving its registered agent, Bernie Kistler, at 3740 DaVinci Court, Suite 460, Peachtree Corners, Gwinnett County, Georgia 30092.

## JURISDICTION

### 3.

Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendant, and as set forth below, the amount in controversy exceeds $75,000.00.

## VENUE

### 4.

Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the actions giving rise to Plaintiff's claims occurred in this division of this district.

## FACTS

**The Policy**

### 5.

Bennett Street purchased Cincinnati policy number ENP 041 71 98, effective from December 21, 2016 through December 21, 2019 providing building and personal property coverage for ten different locations with a blanket policy limit of $8,679,000 (the "Policy"). A copy of the relevant portions of the Policy is attached

hereto as <u>Exhibit A</u>.

6.

The purpose of the Policy was to enable Bennett Street to make repairs to or replace property without having to reserve funds or obtain significant funds if damage occurred.

7.

The Policy defines a collapse as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose."

8.

Cincinnati says in its Policy that it "will pay for a 'loss' to Covered Property, caused by a collapse of a building or any part of a building insured under this Coverage Part, if the collapse is caused by one or more of the following:

\* \* \*

(b)    Decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

\* \* \*

(e)    Weight of rain that collects on a roof;

\* \* \*

The criteria set forth in (1)(a) through (1)(c) of this Coverage Extension do not limit the coverage otherwise provided for the causes of loss listed in (2)(a) (2)(d) or (2)(e) of this paragraph."

Ex. A at 33.

9.

The Policy covers additional costs of demolition or construction due to enforcement of an ordinance or law, in pertinent parts, as follows:

g.    Ordinance or Law

(1)    If a Covered Cause of Loss occurs to a covered building or structure, resulting in the enforcement of an ordinance or law that:

(a)    Requires the demolition of undamaged parts of covered buildings or structures that are damages or destroyed by a Covered Cause of Loss; or

(b)    Regulates the construction or repair of buildings or structures, or establishes building zoning, or land use requirements at the "premises"; and

(c)    is in force at the time the loss is sustained;

we will pay

(a)     For loss in value of the undamaged portion of the building or structure caused by enforcement of an ordinance or law that requires demolition of undamaged parts of the same building or structure;

(b)     The cost to demolish and clear the site of undamaged parts of the building or structure; and

(c)     The increased cost to:

1)     Repair or reconstruct damaged portions of that building or structure; and

2)     Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

* * *

Ex. A at 27-28.

10.

The coverage afforded by the Ordinance or Law coverage is amended by an endorsement, as follows:

(5)     The most we will pay under this Additional Coverage in any one occurrence is the following:

(a)     For g.(1), second (a), this coverage is included within the Limits of Insurance shown in the Declarations as applicable to the covered

Building property. This does not increase the Limit of Insurance.

(b)     For g.(1) second (b) and second (c) and second (d) combined, the

Blanket Coverage Limit as provided in Section Y. of this endorsement

per building. This is in addition to the Limits of Insurance shown in the

Declarations.

Ex. A at 61.

11.

The Blanket Coverage Limit that is in addition to the Limits of Insurance

shown in the Declarations is $150,000.

Ex. A at 51, 56.

12.

In addition to the coverage under the previous endorsement, another

endorsement provides additional Ordinance or Law Coverage in the amount of

$183,750 for Demolition Cost Coverage, and $300,000 for Increased Construction

Cost Coverage.

Ex. A. at 68-71.

**The Collapse**

13.

On May 14, 2019, the roof collapsed at 45 Bennett Street (the "Insured

Premises"), an insured building under the Policy, and the collapse was reported immediately to Cincinnati.

14.

Bennett Street began repair work on the Insured Premises almost immediately.

15.

On May 17, 2019, Cincinnati hired an engineer to inspect the Insured Premises.

16.

Cincinnati's engineer inspected the Insured Premises on May 21, 2019 and May 23, 2019, and issued a report to Cincinnati on June 19, 2019.

17.

The engineer determined that the roof had collapsed due to ponding rainwater on the roof of the Insured Premises; in fact, the engineer refers to the damage as a collapse nearly 20 times in his report.

18.

Despite the engineer finding that the roof had collapsed, which is part of the Insured Premises, and that the cause was ponding water, which is a covered cause of loss, Cincinnati denied the claim because it was not a "collapse."

19.

Cincinnati necessarily ignored the language of the Policy, its own expert, and common sense to claim that no collapse had occurred. Cincinnati did not reserve any specific rights under the Policy in its denial of coverage.

20.

Bennett Street was required to retain counsel to contest Cincinnati's denial of coverage.

21.

On August 15, 2019, after Cincinnati was confronted with its erroneous coverage analysis, Cincinnati decided "to move forward with the adjustment of this claim, . . ." subject to reserving its rights as to whether the collapse is "an excluded cause of loss." Cincinnati did not reserve any other rights under the Policy.

22.

Cincinnati continued with the adjustment of Bennett Street's claim, but it was an unnecessarily lengthy process due to the insistence of Cincinnati to use computer-generated costs for construction from a claims consultant from Tennessee, and Cincinnati's serial inquiries on issues that it already had the knowledge and resources to answer.

23.

Cincinnati's delays caused this project, which should have been funded and completed prior to the onset of the COVID-19, to be dramatically affected by the economic effects of the pandemic shutdowns.

24.

Government shutdowns delayed permit applications, which still exist today, and the economic shutdown has caused supply chain issues and labor shortages that have increased the costs of construction over 30% from the pre-pandemic quotes.

25.

Bennett Street, on the other hand, obtained estimates from an actual construction company in Atlanta that would contract to do the work. The estimated cost to repair and replace the damage at the Insured Premises as determined by a contractor capable of undertaking the work was found to be at least $750,000 more than the estimate from Cincinnati's claims consultant.

26.

Bennett Street bargained for actual replacement cost of its building when it purchased the Policy.

27.

Cincinnati is required to pay actual replacement cost as part of its contractual

obligations.

28.

Cincinnati was then required to pay up front an accurate estimate of the actual cash value of the replacement cost.

29.

Cincinnati would not agree to pay actual replacement cost for the repairs to the Insured Premises.

30.

Cincinnati would not agree to pay the actual cash value of the actual replacement cost for the repairs to the Insured Premises.

31.

Bennett Street made a formal demand for payment of the Actual Cash Value due under the Policy on January 3, 2022, a true and correct copy of which is attached hereto as Exhibit B.

32.

Cincinnati did not pay the amount due under the Policy within sixty (60) days of the demand.

33.

Bennett Street has complied or fulfilled, or Cincinnati has waived, all of the

conditions precedent for Bennett Street to bring this action in this Court.

## COUNT I

### Breach of Contract

34.

The allegations of Paragraphs 5 through 33 are incorporated into this Count I as if fully set forth herein.

35.

The Policy is a contract of insurance between Bennett Street and Cincinnati.

36.

Cincinnati breached the contract in at least the following ways:

(a)    Cincinnati denied coverage and such denial was frivolous and without any reasonable basis; and

(b)    Cincinnati has refused to pay Bennett Street the actual cash value of the costs to replace the damaged portions of the Insured Premises, and such refusal is frivolous and without any reasonable basis.

37.

Cincinnati's improper denial of Bennett Street's claim under the Policy caused unreasonable delay and increased costs of repairs to the Insured Premises.

38.

Cincinnati's refusal to pay the replacement cost for the damages to the Insured Premises, and in turn the actual cash value of the damages to the Insured Premises, has denied Bennett Street the benefits of its bargain under the Policy and damaged Bennett Street by preventing it from completing repairs of the building in a timely manner.

39.

Bennett Street has suffered other damages due to Cincinnati's breach of the Policy's terms including, but not limited to, two additional years of lost rental income from Insured Premises.

## **COUNT II**

### **Bad Faith Pursuant to O.C.G.A. § 33-4-6**

40.

The allegations of Paragraphs 5 through 33 and 35 through 39 are incorporated into this Count II as if fully set forth herein.

41.

Cincinnati's denial of Bennett Street's claim for the collapse of the Insured Premises was in bad faith.

42.

Cincinnati's refusal to pay Bennett Street the full amount of the actual cash

value of the repairs to the Insured Premises was in bad faith.

43.

Bennett Street made many demands on Cincinnati for payment of the proper amount due under the Policy, the last of which was made on January 3, 2022, which demanded the amounts then due under the Policy, and informed Cincinnati of Bennett Street's intention to seek damages pursuant to O.C.G.A. § 33-4-6. *See* Ex. B.

44.

It has been more than sixty (60) days since the demand was made on Cincinnati and Cincinnati has not complied with its obligation to pay the full amount due under the Policy.

45.

Bennett Street is thus entitled to its expenses of this litigation, including attorneys' fees, and a 50% penalty of any award, due to Cincinnati's bad faith in its denial of Bennett Street's claim, and for its refusal to pay the actual cash value of the repairs to the Insured Premises within sixty (60) days of Bennett Street's demand.

46.

Plaintiff Bennett Street Properties, L.P. hereby demands that all issues herein be tried before a jury.

WHEREFORE, Plaintiff Bennett Street Properties, L.P. prays for the following relief:

a.     That summons issue forthwith;

b.     That the Court issue a judgment in favor of Plaintiff and against Defendant in the amount due under the Policy;

c.     That the Court issue a judgment in favor of Plaintiff and against Defendant for the maximum statutory penalty permitted under Georgia law;

d.     That the Court issue a judgment in favor of Plaintiff and against Defendant in the amount of pre-judgment and post-judgment interest;

e.     That the Court issue a judgment in favor of Plaintiff and against Defendant in an amount equal to Plaintiff's litigation expenses including, but not limited to, Plaintiff's attorneys' fees;

f.     That Plaintiff be awarded its costs; and

g.     Such other and further relief the Court deems fair and just.

Respectfully submitted this 17th day of March, 2022.

/s/David J. Forestner
David J. Forestner, Georgia Bar No. 269177
dforestner@joneswalker.com
JONES WALKER LLP
1360 Peachtree Street NE, Suite 1030
Atlanta, Georgia 30309
(404) 870-7527
*Attorney for Plaintiff*

## <u>CERTIFICATION OF FONT TYPE AND SIZE</u>

The undersigned counsel hereby certifies that the foregoing has been prepared with Times New Roman 14-Point Font, as approved in LR 5.1C.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing Plaintiff's First Amended Complaint was filed on March 17, 2022 via CM/ECF and was electronically served on the following:

Stephanie F. Glickauf, Esq.
Goodman McGuffey, LLP
3340 Peachtree Road, NE, Suite 2100
Atlanta, Georgia 30326
sglickauf@gm-llp.com
*Counsel for Defendant*

/s/ David J. Forestner
David J. Forestner
Georgia Bar No. 269177

*Attorney for Plaintiff*